IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

Gerald Brown,            )
                      )    Civil Action No. 6:16-317-TMC-KFM
          Petitioner,  )
                      )    **REPORT OF MAGISTRATE JUDGE**
      vs.            )
                      )
Larry Cartledge,      )
                      )
         Respondent.  )
_____)

The petitioner, a state prisoner represented by counsel, seeks habeas corpus relief pursuant to 28 U.S.C. § 2254. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

## BACKGROUND

The petitioner is currently incarcerated at Perry Correctional Institution in the South Carolina Department of Corrections (doc. 1 at 1). The petitioner was indicted by the Greenville County Grand Jury in September 2007 for assault and battery of a high and aggravated nature (2007-GS-23-7602), impersonating law enforcement (2007-GS-23-7603), malicious injury to a police dog (2007-GS-23-7604), burglary first degree (2007-GS-23-7605), armed robbery (2007-GS-23-7606), three counts of kidnapping (2007-GS-23-7622), and possession of a weapon during the commission of a violent crime (2007-GS-23-7600). During the February 2009 Term of the Greenville County Court of General Sessions, the petitioner was indicted on one count of resisting arrest (2007-GS-23-7633) (app. 457–81[1]). The State served a Notice of Intent to Seek Sentencing pursuant to S.C. Code Sec. 17-25-45 on the burglary, armed robbery, and kidnapping charges on September 2, 2008 (app. 483).

_____

[1] The Appendix can be found at Docket Entry Numbers 11-1 through 11-3.

At trial, the petitioner was represented by Randall Chambers, a part-time Public Defender for Greenville County (app. 1–456). The State was represented by Assistant Solicitor Douglas Webb of the Thirteenth Judicial Circuit Solicitor's Office (*id*.). On April 14–16, 2009, the petitioner was tried by a jury before the Honorable Edward W. Miller, Circuit Court Judge (*id*.).  On April 16, 2009, the petitioner was convicted of all of the offenses (app. 447).  The petitioner received life sentences for armed robbery, burglary first degree, and for each of charge of kidnapping; ten years for assault and battery of a high and aggravated nature; one year for impersonating a police officer;  one year for resisting arrest; five years for possession of a weapon during the commission of a violent crime; and five years for injury to a police dog (app. 454).

### Underlying Case Facts

Around midnight on June 12, 2007, George Howard returned to his home with his two minor sons (app. 78, 92–93, 100).  Howard stepped inside of the house, heard his older son yell, turned around, and saw a man, who was wearing a mask and a shirt with "police" written on it, running towards them with a gun (app. 79, 94–95).  The man ordered everyone to get down, and they complied (app. 79–80, 95).  While getting onto the floor, Howard, who had been speaking on his cell phone with a friend, placed the phone down with his call still active (app. 97).  The intruder then bound Howard and his older son with handcuffs and duct tape and threatened to kill them (app. 80, 95–96).  The man demanded money and threatened to bind the younger son with duct tape if Howard did not reveal the location of the money (app. 97).  Howard told him the money was in a container in the attic (app. 97).  The man moved Howard to a back room, retrieved $23,000 in cash from the attic, and returned downstairs; he spoke to someone on the phone and told him all he could find was $20,000 (app. 97–98).  He then ordered Howard to reveal the location of the "real" money, repeatedly shocked Howard with a taser, and rummaged through the house (app. 98–99).  The man then fled the home (app. 100).

2

Michael Thompson, who had been talking to Howard on the phone, heard Howard's phone drop followed by someone saying, "Get down" (app. 122–23). Thompson immediately called 911 on another phone and linked the calls together (app. 123). As he continued to listen, Thompson heard screaming and someone demanding money (app. 123–24). Based on the emergency call, law enforcement officers were dispatched to Howard's home (app. 137, 166, 192, 272, 285).

Multiple officers from the Greenville County Sheriff's Office arrived at the location and surrounded the house (app. 137). Master Deputy Dan Acord positioned himself at the rear of the house and looked inside one of the windows (app. 139). He observed a bound individual on the floor and a man walking throughout the house (app. 139–40). He watched the man, who was wearing a bullet-proof vest and a shirt with "police" on it, for several minutes and reported his movements to the other officers (app. 140).

Deputy Chuck Porter observed a man wearing a mask and vest and armed with a handgun exit the front door (app. 168). Porter immediately ordered the man to drop the weapon, and the man took off around the right side of the house (app. 169). Deputy Travis Wyatt immediately went into the house to secure it after the suspect fled (app. 274). He found the victims bound inside. He located no drugs, money, or other suspects in the house (app. 275–76). Meanwhile, Acord heard the commotion, moved towards the front of the house, and saw a man wearing the same clothes as the suspect he previously observed moving around inside Howard's home (app. 141). He commanded the suspect to stop, but he continued to flee (app. 142).

Deputy Michael Bryan, Deputy Hal Harris, and his police dog, Cash, were positioned at the back of the house when they heard Porter shouting commands at the suspect around front (app. 194–95, 285–86). Seconds later, the officers observed an armed man wearing a vest, a mask, a badge, and shirt with "police" on it run around the corner from the front of the house (app. 197–98, 286). The man ran towards a black bag

3

positioned next to the house and then saw the officers (app. 197). They commanded him to stop, and the man immediately turned and fled into the woods (app. 197, 287). The officers quickly pursued, and Deputy Harris released Cash to apprehend the suspect (app. 199, 288).

Cash caught the suspect and engaged him just inside the wood line (app. 199, 288). Harris followed behind and never lost sight of the suspect after seeing him run around from the front of the house (app. 288–89). Harris and Bryan followed the suspect into the woods, while Acord and other officers attempted to cut off his escape (app. 289). During the pursuit, the suspect repeatedly struck, punched, and choked Cash while trying to evade the officers (app. 290). He slammed Cash into a tree and attempted to yank one of his ears off (app. 290). Eventually, Harris tackled the man they were pursuing, who was the petitioner, and multiple officers attempted to subdue him (app. 291–92). The petitioner fought with the officers, attempted to crawl away, and continued to struggle to get free (app. 144–45). The petitioner was finally handcuffed and arrested (app. 146). A cell phone was located in the petitioner's pocket with the last call placed to "Duke" (app. 158). The petitioner was then transported out of the woods, informed of his rights, and treated by paramedics (app. 149–50, 173).

During the investigation of the crime scene, officers discovered a handgun on a tree in the woods where Acord initially encountered the petitioner (app. 146–147, 249). Additionally, they recovered the body armor from the petitioner after he was subdued along with the remnants of his shirt with "police" written on it (app. 173). A large quantity of money was discovered in Howard's backyard, and a taser was located in the woods behind the home (app. 247–48, 254). The officers also recovered the black bag the petitioner had run towards during the pursuit (app. 247). A gun holster, two flashlights, gloves, a screw driver, a crowbar, gum, and other tools were found inside the bag (app. 246–47). The

4

following day, officers also found a "special officer" badge and a handcuffs case at the location where the petitioner was arrested (app. 206–07).

The petitioner testified in his own defense, offering a substantially different account of the events of June 12, 2007 (app. 314–26). The petitioner testified he had known Howard his whole life and Howard was drug partners with his cousin, Andrell Terry[2] (app. 315–16). The petitioner admitted he was involved with selling drugs (app. 317). He alleged he went to Howard's house on the night of the incident with $23,000 he received from Terry in order to purchase 54 ounces of cocaine (app. 318). He stated he heard noises inside Howard's home, looked inside, and saw people tied up in the floor (app. 319). The petitioner testified he then called Terry and was instructed to go through the woods behind Howard's house to be picked up (app. 319). The petitioner asserted he waited in the woods for twenty minutes, saw lights, jumped up to run, and was attacked by a dog (app. 322, 335–36). He acknowledged he then fought with the officers and the police dog before he was subdued, arrested, and taken to the hospital (app. 323–24). He testified he did not give up when the officers confronted him because he did not want to go to jail (app. 345). The petitioner denied wearing a shirt with "police" on it and denied having a gun, black bag, badge, or handcuffs (app. 324–25).

**Direct Appeal**

A timely notice of appeal was served and filed on behalf of the petitioner on April 27, 2009. (doc. 11-4). On appeal, the petitioner was represented by Tristan M. Shaffer, Appellate Defender for the South Carolina Commission on Indigent Defense, Division of Appellate Defense (doc. 11-5). In the final brief of appellant, the petitioner argued that under the South Carolina and United States Constitutions, the trial judge erred in sentencing the petitioner to life without parole under South Carolina Code Section

---

[2] The petitioner's cousin is identified as Andrea Terry at trial and Andrell Terry at the PCR hearing. For clarity, he undersigned will refer to him as Andrell Terry.

17-25-45, based on a 19 year-old conviction for a crime committed when the petitioner was a juvenile (*id*. at 5).  The State filed a final brief of respondent (doc. 11-6).

In an unpublished opinion filed May 2, 2012, the South Carolina Court of Appeals affirmed the petitioner's convictions (doc. 11-7).  The Court of Appeals affirmed pursuant to Rule 220(b)(1), SCACR, and the following authorities: *State v. Porter*, 698 S.E.2d 237, 243 (S.C. Ct. App. 2010) (holding issues not raised and ruled upon in the trial court will not be considered on appeal); *State v. Dunbar*, 587 S.E.2d 691, 694 (S.C. 2003) ("A party need not use the exact name of a legal doctrine in order to preserve it, but it must be clear that the argument has been presented on that ground."); *In re Care & Treatment of Corley*, 616 S.E.2d 441, 444 (S.C. Ct. App. 2005) ("Constitutional issues, like most others, must be raised to and ruled on by the trial court to be preserved for appeal.") (*id.*).  The remittitur was issued on May 18, 2012 (doc. 11-8).

### PCR

On December 14, 2012, the petitioner filed an application for post-conviction relief ("PCR") (2012-CP-23-7837), asserting claims of ineffective assistance of trial and appellate counsel (app. 536–71).  The petitioner alleged trial counsel failed to conduct proper pre-trial investigation regarding: (a) the existence of an exculpatory witness; (b) the existence of exculpatory evidence; (c) the existence of Howard's criminal past; (d) the extent of Howard's prior contact with the petitioner; and (e) the failure to present the petitioner's theory of defense during opening statements (app. 548).  He claimed appellate counsel failed to argue that the jury instruction regarding multiple offenders was improper (*id*.).  The petitioner also argued that the trial court failed to permit the petitioner time to obtain new counsel and that his due process rights were violated when he was sentenced to a five year consecutive term of incarceration for possession of a weapon under South Carolina Code Section 16-23-490, when he received a term of life incarceration without parole for the underlying violence crime (*id*.).

6

On March 28, 2013, the petitioner filed an addendum to his application and memorandum of law in support of motion for relief (app. 572–75). The State filed its return on June 3, 2013 (app. 576–81). The petitioner filed a reply to the return on August 1, 2013 (app. 582–85).

An evidentiary hearing in the PCR action was held on February 19, 2014, before the Honorable G. Edward Welmaker, Circuit Court Judge (app. 592–680). The petitioner was present and was represented by James P. Craig, and the State was represented by Assistant Attorney General Karen Ratigan (*id*.). By order filed April 9, 2014, the PCR court found the petitioner had not established any constitutional violations or deprivations and denied and dismissed the PCR application with prejudice (app. 690–700).

**PCR Appeal**

The petitioner served and filed a notice of appeal on April 21, 2014, and April 29, 2014, respectively (doc. 11-10; app. 702-703). On appeal, the petitioner was represented by Joshua Snow Kendrick and Christopher S. Leonard (doc. 11-11). In the petition, the petitioner raised the following arguments: (1) trial counsel was ineffective for failing to conduct meaningful pretrial investigation and preparation,(2) trial counsel was ineffective for failing to locate and call an exculpatory witness at trial, (3) trial counsel was ineffective for failing to discover and point out serious inconsistencies in the victim's testimony, (4) trial counsel was ineffective for failing to introduce critical evidence at the petitioner's trial, and (5) appellate counsel was ineffective for failing to raise a valid and preserved argument in the direct appeal (*id*. at 3). The State filed a return on May 18, 2015 (doc. 11-12). The petitioner filed a reply on May 29, 2015 (doc. 11-13). By order filed September 23, 2015, the Supreme Court of South Carolina denied the petition for writ of certiorari (doc. 11-14). The remittitur was issued on October 14, 2015 (doc. 11-15).

7

## FEDERAL PETITION

On February 2, 2016, the petitioner filed his Section 2254 petition (doc. 1). On April 27, 2016, the respondent filed a motion for summary judgment and a return and memorandum (docs. 11 and 12). After being granted one extension of time, the petitioner filed his response in opposition on June 14, 2016 (doc. 16).

In his federal habeas corpus petition, the petitioner makes the following claims:

> **Ground One:** PETITIONER GERALD BROWN WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL COUNSEL FAILED TO CONDUCT MEANINGFUL PRETRIAL INVESTIGATION AND PREPARATION.
>
> **Ground Two:** PETITIONER GERALD BROWN WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL COUNSEL FAILED TO LOCATE AND CALL AN EXCULPATORY WITNESS AT TRIAL.
>
> **Ground Three:** PETITIONER GERALD BROWN WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL COUNSEL FAILED TO DISCOVER AND POINT OUT SERIOUS INCONSISTENCIES IN THE VICTIM'S TESTIMONY.
>
> **Ground Four:** PETITIONER GERALD BROWN WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL COUNSEL FAILED TO INTRODUCE CRITICAL EVIDENCE AT HIS TRIAL.
>
> **Ground Five:** PETITIONER GERALD BROWN WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS APPELLATE COUNSEL FAILED TO RAISE A VALID AND PRESERVED ARGUMENT RELATED TO THE JURY INSTRUCTIONS IN BROWN'S TRIAL

(Doc. 1-1).

## APPLICABLE LAW AND ANALYSIS

### Summary Judgment Standard

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

### *Exhaustion*

Before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). The parties agree that the petitioner has exhausted his remedies for the claims raised in this action (doc. 11 at 24; doc. 1-1 at 5, 7, 9, 10, 12).

### *Ineffective Assistance of Counsel*

To be entitled to relief on an ineffective assistance claim, a petitioner must show that (1) trial counsel's performance fell below an objective standard of reasonableness, and (2) a reasonable probability exists that but for counsel's error, the result of that proceeding would have been different. *Strickland v. Washington*, 466 U.S.668, 687–94 (1984). *Strickland* does not guarantee perfect representation, only a "'reasonably competent attorney.'" *Id.* at 687 (quoting *McMann v. Richardson*, 397 U. S. 759, 770 (1970)). There is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions in the case. *Id.* at 690.

The review of ineffective assistance of counsel claims in federal habeas is not simply a new review of the merits; rather, habeas review is centered upon whether the state court decision was reasonable. *See* 28 U.S.C. § 2254(d). Additionally, each step in the review process requires deference—deference to counsel and deference to the state court that previously reviewed counsel's actions:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is

10

whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal citations omitted).

### Ground One

In Ground One of his petition, the petitioner claims that trial counsel was ineffective for failing to conduct meaningful pretrial investigation and preparation (doc. 1-1 at 5–7). Specifically, he contends counsel only spent a minimal amount of time preparing for trial (*id*.). The petitioner is not entitled to federal habeas corpus relief based upon this allegation.

Here, the PCR court addressed trial counsel's performance under the standard set forth in *Strickland* (app. 692–93). The PCR court found as follows:

> [T]he Applicant failed to meet his burden of proving trial counsel did not properly meet with him to discuss the case. Trial counsel testified they had numerous meetings before the trial (most of which took place the week beforehand) and that they reviewed the State's evidence in the case. Trial counsel testified he was willing to spend as much time as necessary to meet with the Applicant and prepare the case, but that the Applicant was hostile and would not discuss the case with him. This Court finds trial counsel's testimony is credible. This Court notes trial counsel is a very experienced criminal defense attorney and had to contend with an uncooperative client. Regardless, this Court finds trial counsel adequately conferred with the Applicant, conducted a proper investigation, and was thoroughly competent in his representation. This Court finds the Applicant failed to demonstrate what more trial counsel could have done in order to prepare his case for trial. <u>See Davis v. State</u>, 326 S.C. 283, 486 S.E.2d 747 (1997) (denying relief where applicant failed to present witness or specific testimony establishing he would have had a defense with additional time to prepare for trial).
>
> ***
>
> Accordingly, this Court finds the Applicant has failed to prove the first prong of the <u>Strickland</u> test - that trial counsel failed to render reasonably effective assistance under prevailing professional norms. The Applicant failed to present specific and compelling evidence that trial counsel committed either errors or omissions in his representation of the Applicant. This Court also finds the Applicant has failed to prove the second prong of <u>Strickland</u> - that he was prejudiced by trial counsel's performance. This Court concludes the Applicant has not met

11

> his burden of proving counsel failed to render reasonably effective assistance. See Frasier v. State, 351 S.C. at 389, 570 S.E.2d at 174.

(App. 695, 698 (footnote omitted)).  The PCR court's denial of the petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent.  First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent.  Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent.

The record supports the PCR court's determination.  At the PCR hearing, the petitioner testified that he first met trial counsel a few months before his trial and did not see him again until the week before his trial (app. 629).  He stated that he met with trial counsel a few times before trial (*id*.).  The petitioner testified that he did not even have the opportunity to hear a relevant 911 call before trial, that he disagreed with trial counsel regarding his handling of the case, and that he tried to fire him prior to trial (app. 631, 633).  However, trial counsel testified that he had two meetings with the petitioner more than a week before the trial; he stated that the petitioner would not discuss his version of events regarding the night of the crime and told trial counsel that he wanted a new attorney (app. 658–59).  Trial counsel testified that he met with the petitioner in the week before the trial, and they reviewed the State's evidence (app. 662–63, 670–72).  Trial counsel stated that he was the second attorney on the case and he received the discovery from the previous attorney; he further stated that he felt well-prepared from a discovery standpoint, but the petitioner would not actively assist him (app. 657–58, 669, 671).

The PCR court found trial counsel's testimony credible, and this finding is entitled to deference. *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008) ("[F]or a federal habeas court to overturn a state court's credibility judgments, the state court's error must

be stark and clear."(citing 28 U.S.C. § 2254(e)(1))); *see also Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."); *Wilson v. Ozmint*, 352 F.3d 847, 858 (4th Cir. 2003) (holding that the petitioner may overcome this presumption of correctness only by showing "'clear and convincing evidence to the contrary.'" (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 240 (2003))). Here, the petitioner has presented no evidence to support a finding that trial counsel's testimony was not credible. At the PCR hearing, trial counsel testified that he felt he was prepared for trial from a discovery standpoint and that he met with the petitioner several times before trial. *See Morris v. Slappy*, 461 U.S. 1, 11 (1983) ("Not every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel.") Thus, there is no evidence that the PCR court's decision was contrary to or an unreasonable application of applicable Supreme Court precedent, and the petitioner is not entitled to habeas corpus relief on this ground.

### Ground Two

In Ground Two, the petitioner asserts trial counsel was ineffective when he failed to locate and call Terry to testify on the petitioner's behalf (doc. 1 at 7–9). The petitioner contends that trial counsel did not attempt to locate Terry until a few days before trial because he only began meeting with the petitioner to prepare for trial a few days before the trial started (*id.*). The petitioner alleges that Terry should have been easy to locate because his phone number had not changed, he always answered his phone, and he lived at the same address (*id.*). The petitioner is not entitled to federal habeas relief on this ground.

Here, the PCR court addressed trial counsel's performance under the standard set forth in *Strickland* (app. 692–93). The PCR court found:

13

> [T]he Applicant failed to meet his burden of proving trial counsel should have called Andrell Terry as a witness at trial. Terry stated that he dropped the Applicant off near the victims' house that night. Terry stated the Applicant had a bag of cash but did not have a police shirt, mask, vest, or weapons. The Applicant corroborated Terry's testimony at the PCR hearing. The Applicant admitted that he testified at trial that Terry gave him the cash in this case and stated this was a lie. The Applicant testified he never spoke to Terry after he was dropped off but admitted he testified differently at trial (that he spoke to Terry, who told him to hide in the woods). The Applicant admitted he never told Terry to contact trial counsel. Trial counsel testified he was unable to locate Terry before trial and that Terry never contacted him. This Court does not find either Terry or the Applicant to be credible witnesses. This Court finds trial counsel's testimony, however, is credible. This Court notes Terry and the Applicant are first cousins and that Terry knew about the Applicant's arrest prior to his trial. Regardless, Terry never contacted trial counsel in order to provide allegedly helpful information about the night in question. This Court finds this improbable. Rather, this Court finds trial counsel made every effort to locate Terry, was unable to do so, and informed the trial judge and jury of this. (Trial transcript, pp.355-56; pp.380-81). This Court finds the Applicant failed to prove trial counsel was deficient. This Court also finds that, based upon the utter lack of credibility of Terry's story, the Applicant failed to prove any resulting prejudice.

(App. 695–96). The PCR court's denial of the petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent. Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent.

The record supports the PCR court's determination. At the PCR hearing, the petitioner stated that he told trial counsel that Terry dropped him off the night of the crime and gave trial counsel Terry's contact information the weekend before trial (app. 634–35, 652). The petitioner also stated that he did not tell Terry to contact trial counsel at any time before trial (app. 652–53). Terry testified at the PCR hearing that he drove the petitioner to the victims' house but did not realize at the time where the petitioner was going (app. 601). Terry stated that the petitioner was wearing a white t-shirt and jeans and did not have

14

anything else with him except for a shopping bag full of cash (app. 602, 604–06).  Terry stated he found out that the petitioner was arrested for the home invasion of the victims' house a few months later (app. 609).  Terry stated that he would have testified at trial; however, he also stated that he did not contact the petitioner's defense attorney before trial (app. 607).

Trial counsel testified that he attempted to contact Terry but that his investigator could not locate him (app. 661).  Trial counsel also testified that Terry never contacted him (app. 661).  Trial counsel noted that he was informed of Terry's existence late in the process because the petitioner did not initially cooperate in trial preparation (app. 672).

Moreover, the PCR court's decision is not an unreasonable application of Supreme Court precedent.  As previously discussed, the PCR court found that trial counsel's testimony was credible, and that finding is entitled to deference.  *See Cagle*, 520 F.3d at 324.  Here, it appears from the record that the petitioner notified his counsel that Terry was able to testify a few days before trial.  "Counsel cannot be expected to investigate a fact of which he or she has no knowledge."  *Mollohan v. McBride*, C.A. No. 2:04-1021, 2006 WL 660870, at *15 (S.D.W. Va. Mar. 15, 2006); *see also Boseman v. Bazzle*, 364 F. App'x 796, 809–10 (4th Cir. 2010) (finding that counsel's performance was not deficient where "there was no basis for concluding that trial counsel ignored or should have known that a credible alibi existed for either the time of the telephone call or the murder and robbery"); *United States v. Pellerito*, 878 F.2d 1535, 1543 (1st Cir. 1989) ("If counsel was ineffective in any sense, it was only because the client rendered him so . . . by keeping [counsel] in the dark. . . .  That is not the sort of 'ineffectiveness' for which relief can be granted.").  To the extent that the petitioner alleges that trial counsel could not locate the witness because he was not properly prepared for trial, that argument was the basis of Ground One and is discussed above.  Thus, there is no evidence that the PCR court's

15

decision was contrary to or an unreasonable application of applicable Supreme Court precedent, and the petitioner is not entitled to habeas corpus relief on this ground.

### Ground Three

In Ground Three, the petitioner asserts trial counsel was ineffective when he failed to discover and point out serious inconsistencies in the victim's testimony (doc. 1-1 at 9–10). The petitioner alleges that he and the victim had grown up together; therefore, the victim untruthfully claimed that he did not know the petitioner before he was arrested (*id.*). The petitioner is not entitled to federal habeas corpus relief on this ground.

Here, the PCR court addressed trial counsel's performance under the standard set forth in *Strickland* (app. 692–93). The PCR court found:

> [T]he Applicant failed to meet his burden of proving trial counsel should have contacted witnesses in order to refute the adult victim's contention that he did not know him. Trial counsel testified that Applicant addressed this issue during his trial testimony. Trial counsel also testified that, given the circumstances of this case, this was not a big issue. This Court agrees, based on the State's presentation of overwhelming evidence of the Applicant's guilt. See Franklin, 346 S.C. at 570 n.3, 552 S.E.2d at 722 n.3; Geter, 305 S.C. at 367, 409 S.E.2d at 346. Regardless, as these potential witnesses did not testify at the PCR hearing, this Court cannot speculate as to what they would have testified to at trial. See Bannister v. State, 33 S.C. 298, 303, 509 S.E.2d 807, 809 (1998) (the South Carolina Supreme Court "has repeatedly held a PCR applicant <u>must produce the testimony of a favorable witness or otherwise offer the testimony in accordance with the rules of evidence</u> at the PCR hearing in order to establish prejudice from the witness' failure to testify at trial." (emphasis in original).

(App. 697). The PCR court's denial of the petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent. Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent.

The record supports the PCR court's determination.  At the PCR hearing, the petitioner said he had known Howard for years, contrary to what Howard told police (app. 617, 620, 636).  The petitioner stated trial counsel should have contacted witnesses to refute Howard's testimony on this point and that he should have asked Howard about prior drug deals (app. 636–37).  Terry testified at the PCR hearing that he, Howard, and the petitioner had grown up together (app. 599).

Trial counsel testified that the petitioner said he had known the adult victim for years but that, given the circumstances of this case, this was not a big issue  (app. 661-62).  Trial counsel further testified that the petitioner addressed this issue during his trial testimony (app. 674).

The petitioner appears to argue that there were many witnesses who could have confirmed that he and Howard had known each other for several years.  At the PCR hearing, only Terry testified that he would have testified at trial that the petitioner and Howard knew each other.[3]  As previously discussed, the PCR court found that Terry's testimony and the petitioner's testimony was not credible and found trial counsel's testimony credible.  Trial counsel testified that he was not able to locate Terry prior to trial.  Moreover, trial counsel testified he felt that whether the petitioner and Howard knew each other was insignificant.   Thus, the PCR court's decision was not contrary to or an unreasonable application of applicable Supreme Court precedent.  *See Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to

---

[3]  To the extent that the petitioner alleges that other witnesses would have been available to testify regarding his relationship with Howard, as noted by the PCR court, prejudice from trial counsel's failure to interview or call witnesses cannot be shown where the witnesses do not testify at the PCR hearing.  *Glover v. State*, 458 S.E.2d 538, 540 (S.C. 1995); *see also Jones v. Polk*, 401 F.3d 257, 269 (4th Cir. 2005) (finding a speculative allegation by a petitioner that a witness might have made an inconsistent statement with which counsel could have impeached the witness to be insufficient to warrant an evidentiary hearing).  Thus, there is no evidence that the PCR court's decision regarding any witnesses who did not testify at the PCR hearing was contrary to or an unreasonable application of applicable Supreme Court precedent.

17

eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." (Internal citation omitted)).  Accordingly, there is no evidence that the PCR court's decision was contrary to or an unreasonable application of applicable Supreme Court precedent, and the petitioner is not entitled to habeas corpus relief on this ground.

### Ground Four

In this ground, the petitioner asserts trial counsel was ineffective when he failed to introduce the white shirt that the petitioner was wearing when he was arrested into evidence at trial (doc. 1-1 at 10–12).  The petitioner argues that his clothing became one of the most important issues at trial and that allowing the jury to see the bloody white shirt would have bolstered the defense's arguments (*id*.).  The petitioner is not entitled to federal habeas relief based upon this claim.

Here, the PCR court addressed trial counsel's performance under the standard set forth in *Strickland* (app. 692–93).  The PCR court found:

> [T]he Applicant failed to meet his burden of proving trial counsel should have introduced his white t-shirt into evidence at trial. The Applicant argues this would have been beneficial because the t-shirt was bloody but the police shirt the officers said he was wearing over it was not.  Trial counsel testified he did not recall why he did not introduce the t-shirt at trial and stated it may have been helpful.  This Court finds that the failure to introduce the white t-shirt into evidence was not deficient in light of the fact that the Applicant was hostile with trial counsel during trial preparation and the trial itself.  Regardless, the Applicant cannot prove any resulting prejudice.  Trial counsel actually made the argument during closing statements at trial

18

> that the police shirt should be bloody if the officers' accounts were accurate. (Trial transcript, p.389). Any potential deficiency in not introducing the white t-shirt at trial was negated by the State's presentation of overwhelming evidence of the Applicant's guilt. See Franklin v. Catoe, 346 S.C. 563, 570 n. 3, 552 S.E.2d 718, 722 n. 3 (2001) (finding overwhelming evidence of guilt negated any claim that counsel's deficient performance could have reasonably affected the result of defendant's trial); Geter v. State, 305 S.C. 365, 367, 409 S.E.2d 344, 346 (1991) (concluding reasonable probability of a difference result does not exist when there is overwhelming evidence of guilt).

(App. 696–97). The PCR court's denial of the petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent. Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent.

The record supports the PCR court's determination. At the PCR hearing, the petitioner asserted that police collected his white t-shirt; he stated that trial counsel should have entered the bloody white t-shirt into evidence at trial because it contradicted the officers' testimony that he was wearing the white t-shirt under a blue police shirt and bulletproof vest, which were not covered in blood (app. 627–28, 638–39). Trial counsel testified there were inconsistencies in the officers' testimony about the shirt the petitioner was wearing when he was arrested (app. 665). Trial counsel testified he recalled the white t-shirt issue but did not remember why he did not offer it into evidence at trial (app. 665). Further, in his closing argument at trial, trial counsel argued that neither the blue police shirt nor the vest had blood on them but that the petitioner was bleeding and taken to the hospital; thus the police shirt should be bloody if the officers' accounts were accurate (app. 389). Trial counsel also told the jury that the State had not offered the petitioner's bloody, white t-shirt into evidence (app. 389).

19

The PCR court's decision was not contrary to or an unreasonable application of applicable Supreme Court precedent. *See Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." (internal citation omitted)); *see also Wood v. Allen*, 558 U.S. 290, 301–02 (2010) (holding that a strategic or tactical decision does not have to be articulated by counsel on the record; it is enough that the record shows a basis for strategy); *Wilson v. Greene,* 155 F.3d 396, 404 (4th Cir. 1998) ("Decisions about what types of evidence to introduce 'are ones of trial strategy, and attorneys have great latitude on where they can focus the jury's attention and what sort of mitigating evidence they can choose not to introduce.'" (quoting *Pruett v. Thompson,* 996 F.2d 1560, 1571 n. 9 (4th Cir. 1993))). Accordingly, the petitioner is not entitled to habeas corpus relief on this ground.

### Ground Five

In Ground Five, the petitioner argues that appellate counsel was ineffective for failing to raise a valid and preserved argument on appeal (doc. 1-1 at 12–14). The petitioner contends that appellate counsel should have argued that the trial court erred in instructing the jury on accomplice liability when there was no evidence of an accomplice relationship of two or more parties (*id.*). The petitioner is not entitled to federal habeas relief on this ground.

20

As the Supreme Court explained in *Strickland,* the Sixth Amendment's guarantee of "'the right to counsel is the right to the effective assistance of counsel.'" 466 U.S. at 686 (quoting *McMann v. Richardson,* 397 U.S. 759, 771 n. 14 (1970)). Although *Strickland* involved a claim concerning the alleged ineffective assistance of the defendant's trial counsel, the right to effective assistance of appellate counsel, as well as the *Strickland* standard for evaluating an ineffective assistance of counsel claim, was extended to appellate proceedings in *Smith v. Murray,* 477 U.S. 527 (1986), and *Smith v. Robbins,* 528 U.S. 259 (2000). Effective assistance of appellate counsel does not require the presentation of all issues on appeal that may have merit, and "we must accord appellate counsel the presumption that he decided which issues were most likely to afford relief on appeal." *Bell v. Jarvis,* 236 F.3d 149, 164 (4th Cir. 2000) (en banc) (internal quotation marks omitted). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Gray v. Greer,* 800 F.2d 644, 646 (7th Cir. 1986), *cited with approval* in *Robbins,* 528 U.S. at 288.

Here, the PCR court addressed appellate counsel's performance under the standard set forth in *Strickland* (app. 698). The PCR court found:

> [T]he Applicant has not met his burden of proving appellate counsel was ineffective. A defendant is constitutionally entitled to effective assistance of appellate counsel. Evitts v. Lucey, 469 U.S. 387, 105 S. Ct. 830 (1985). In analyzing a claim of ineffective assistance of appellate counsel, the Court applies the Strickland test just as it would when analyzing a claim of ineffective assistance of trial counsel. See Bennett v. State, 383 S.C. 303, 309, 680 S.E.2d 273, 276 (2009); Southland v. State, 337 S.C. 610, 616, 524 S.E.2d 833, 836 (1999) (noting courts apply the Strickland test to determine if appellate counsel was deficient for failing to raise the issue). This Court finds the Applicant has failed to meet his burden of proving appellate counsel was deficient in not making the jury charge argument. This Court has examined the record and does not find that this argument would have been successful. "Generally, only when ignored issues are clearly stronger that those presented, will the presumption of effective assistance of counsel be overcome." Smith v. Robbins, 528 U.S. 259, 288, 120 S. Ct. 746, 765 (2000) (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986)). This Court does not find the

21

Applicant has overcome the presumption that his appellate counsel was effective.

(App. 698–99).

The PCR court's denial of the petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent. Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent.

The record supports the PCR court's determination. At trial, Howard's son testified that the intruder called someone while he was in their house regarding the money the intruder was searching for (app. 82). Howard stated he told the intruder there was some money in the attic. He testified:

And he came back and he made a phone call. Because he got the money, he made a phone call and he called someone and said – he said, He's acting like all he's got is 20,000 or something he said. So he stayed on the phone maybe 15, 20 seconds and he came back and he asked me, you know, where is the real money?

(App. 98). The State requested the accomplice liability charge be given to the jury and the trial judge agreed, over trial counsel's objection (app. 366–68).

The petitioner cannot show appellate counsel's failure to raise the jury instruction issue was objectively unreasonable or that if he had raised the issue there was a reasonable probability the petitioner would have prevailed. *See Robbins*, 528 U.S. at 285 ("[A petitioner] must first show that his counsel was objectively unreasonable in failing to find arguable issues to appeal—that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them. If [a petitioner] succeeds in such a showing, he then has the burden of demonstrating prejudice."). In *State v. Kelsey*, 502 S.E.2d 63, 76 (S.C. 1998), the Supreme Court of South Carolina approved a broad

accomplice liability charge that stated, ". . . if a crime is committed by two or more persons who are acting together in the commission of a crime, then the act of one is the act of both." The testimony from Howard and his son suggested the possibility that a second person was involved in the crimes, even if only by way of communication with the assailant during the crimes. Therefore, the trial judge could issue a relevant jury charge. *State v. Peer*, 466 S.E.2d 375, 380 (S.C. Ct. App. 1996) (holding a trial court has a duty to give a requested instruction that correctly states the law applicable to the issues and is supported by the evidence); *State v. Williams*, 624 S.E.2d 443, 445 (S.C. Ct. App. 2005) ("If there is any evidence to support the requested charge, the trial court should grant the request.").

The petitioner has failed to show that this issue would likely have been successful on appeal. Thus, the petitioner fails to show appellate counsel was deficient, and he further fails to show that he was prejudiced as a result of the jury charge issue not being raised on appeal because he cannot establish this issue would have changed the outcome of his appeal. *See Bennett v. State*, 680 S.E.2d 273, 276 (S.C. 2009) ("Even if appellate counsel's performance was deficient, we find that such performance did not prejudice [the petitioner]. In order to show that he was prejudiced by appellate counsel's performance, a PCR applicant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (internal quotation marks omitted)). Accordingly, the petitioner is not entitled to habeas relief on this issue, and summary judgment should be granted.

23

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 12) be granted and the petition be denied. The attention of the parties is directed to the notice on the next page.

s/ Kevin F. McDonald
United States Magistrate Judge

December, 2016
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk of Court**
**United States District Court**
**300 East Washington Street — Room 239**
**Greenville, South Carolina 29601**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).