IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Gerald Brown, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action 6:16-317-TMC |
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| Larry Cartledge, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner, Gerald Brown ("Brown"), a state prisoner represented by counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02, D.S.C., this matter was referred to a magistrate judge for pretrial handling. Before the court is the magistrate judge's Report and Recommendation ("Report"), recommending that Respondent's motion for summary judgment (ECF No. 12) be granted. (ECF No. 20). The parties were advised of their right to file objections to the Report. (ECF No. 20 at 25). On January 16, 2017, Petitioner filed timely objections. (ECF No. 24).

The Magistrate Judge makes only a recommendation to the court. The Report has no presumptive weight and the responsibility to make a final determination in this matter remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of a timely filed, specific objection, the Magistrate Judge's conclusions are reviewed only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

1

## I.    Background

The magistrate judge set forth the background and procedural history in detail in his Report.  (ECF No. 20 at 1–5).  Briefly, on June 12, 2007, an armed, masked intruder wearing a shirt with "police" written on it bound George Howard and his older son in Howard's house and threatened to kill them.  *Id*.  The intruder retrieved $23,000 in cash from the attic and fled.  *Id*. Police officers, who had responded to a call and surrounded the house, saw an armed, masked man exit through the front door and run around the side of the house.  *Id*.  Officers, including Deputy Hal Harris ("Harris"), stationed behind the house had watched the suspect, an armed, masked man wearing a badge, bulletproof vest, and shirt that read, "police," in the house through a window for several moments and then, after hearing commotion around the front of the house, observed a man wearing a badge, bulletproof vest, and shirt that read, "police," run around the side of the house and flee into the woods.  *Id*.  The suspect was pursued by a police dog and officers.  *Id*.  Eventually, Harris, who testified that he did not lose sight of suspect, tackled and arrested the suspect, who was discovered to be Brown.  *Id*.

Police discovered a cell phone in Brown's pocket.  (ECF No. 11-1 at 162).  Police recovered body armor and the remnants of the shirt with "police" written on it.  *Id*.  Investigation of the crime scene uncovered a handgun; a "special officer" badge and handcuffs; a large quantity of money in Howard's backyard; a Taser; and a black bag containing a gun holster, two flashlights, gloves, a screw driver, a crowbar, gum, and other tools.  *Id*.  The location of these items and the underlying facts were contested at trial.  (ECF No. 1-1 at 3–4).  Brown contended that he had arrived at Howard's house with $23,000 to purchase cocaine on behalf of his cousin, Andrell Terry, saw someone tied up on the floor through a window, and hid in the woods to await a ride until being attacked by the police dog.  *Id*. at 4.

In September 2007, Brown was indicted for assault and battery of a high and aggravated nature, impersonating law enforcement, malicious injury to a police dog, burglary first degree, armed robbery, three counts of kidnapping, and possession of a weapon during the commission of a violent crime.  In February 2009, Brown was indicted on one count of resisting arrest. Brown was represented at trial by Public Defender Randall Chambers.[1]  (ECF No. 20 at 2). After a jury trial on April 14–16, 2009, Brown was convicted of all charged offenses and sentenced to life sentences for armed robbery, burglary first degree, and three counts of kidnapping; ten years for assault and battery of a high and aggravated nature; one year for impersonating a police officer; one year for resisting arrest; five years for possession of a weapon during the commission of a violent crime; and five years for injury to a police dog.

Brown filed a direct appeal and the South Carolina Court of Appeals affirmed Brown's conviction and sentence on May 2, 2012.  The remittitur was issued on May 18, 2012.  Brown then filed an application for post-conviction relief ("PCR") on December 14, 2012.  After a hearing, the PCR court denied Brown relief on April 9, 2014.  On April 21, 2014, Brown filed an appeal of the denial of his PCR application.  On September 23, 2015, the South Carolina Supreme Court denied Brown's petition for a writ of certiorari.  The remittitur was issued October 14, 2015.  Brown filed this habeas petition on February 2, 2016, raising five grounds for relief.

In his report, the magistrate judge addressed each of the following five grounds that Brown raised in his habeas action:

> **Ground One:**  PETITIONER GERALD BROWN WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL

---

[1] Brown was originally represented by private counsel, Chip Price.  (ECF No. 11-3 at 175, 179).  Price had conducted discovery before being relieved by Brown.  *Id.* at 175.  According to his testimony, Chambers was appointed in early 2009 and received discovery materials from Price.  *Id.* at 179-80.

3

WHEN HIS TRIAL COUNSEL FAILED TO CONDUCT MEANINGFUL PRETRIAL INVESTIGATION AND PREPARATION

**Ground Two:** PETITIONER GERALD BROWN WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL COUNSEL FAILED TO LOCATE AND CALL AN EXCULPATORY WITNESS AT TRIAL

**Ground Three:** PETITIONER GERALD BROWN WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL COUNSEL FAILED TO DISCOVER AND POINT OUT SERIOUS INCONSISTENCIES IN THE VICTIM'S TESTIMONY

**Ground Four:** PETITIONER GERALD BROWN WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL COUNSEL FAILED TO INTRODUCE CRITICAL EVIDENCE AT TRIAL.

**Ground Five:** PETITIONER GERALD BROWN WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS APPELLATE COUNSEL FAILED TO RAISE A VALID AND PRESERVED ARGUMENT RELATED TO THE JURY INSTRUCTIONS IN BROWN'S TRIAL.

(ECF No. 20 at 8). The magistrate judge found that in addressing the first four grounds, the PCR court correctly applied the *Strickland* standard to examine the performance of trial counsel, which is the applicable Supreme Court precedent, and that the record fails to demonstrate that the PCR court's decision conflicted with applicable Supreme Court precedent. (ECF No. 20 at 11–20). *Strickland v. Washington,* 466 U.S. 668 (1984). As to ground five, the PCR court applied the *Strickland* standard to evaluate Petitioner's ineffective assistance of appellate counsel claim, *see Bennett v. State*, 680 S.E.2d 273, 276 (S.C. 2009), and the magistrate judge found that the record supported the PCR court's denial of Petitioner's claim.

## II. Discussion

In his objections, Brown contends that the state court's reasoning was faulty and that the magistrate judge erred by recommending that Brown's petition for relief due to ineffective

4

assistance of trial and appellate counsel be denied.  Brown objects to the magistrate judge's findings on each of his five grounds for relief.

It was Petitioner's "burden before the state court to show both that counsel's performance was deficient—that counsel's representation fell below an objective standard of reasonableness—and that he suffered prejudice as a result—by showing a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Morva v. Zook,* 821 F.3d 517, 528 (4th Cir. 2016) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)). "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter,* 562 U.S. 86, 112 (2011).

"Surmounting *Strickland* 's high bar is never an easy task, and [e]stablishing that a state court's application of *Strickland* was unreasonable [or contrary to clearly established federal law] under § 2254(d) is all the more difficult.  This double-deference standard effectively cabins [the federal habeas court's] review to a determination of whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Morva*, 821 F.3d at 528 (quoting *Richter*, 562 U.S. at 105).

### A.  Failure to Investigate and Prepare

In his first objection, Brown alleges that the magistrate judge's finding was erroneous and that (1) the Supreme Court case *Morris v. Slappy*, 461 U.S. 1 (1983), cited by the magistrate judge, has distinguishable facts from the present situation, (2) the PCR court based its dismissal on clearly erroneous facts, and (3) credibility was improperly taken into account in the magistrate judge's analysis.

First, Brown argues that the facts of *Morris* differ from the facts of the present case and that, therefore, the result should be different.  In *Morris*, the Supreme Court denied a petition for

habeas corpus which alleged that the trial court abused its discretion by failing to order a substitution of counsel after the petitioner insisted that counsel, who was assigned to the case six days prior to the trial date,[2] did not have adequate time to prepare for the case. *Morris*, 461 U.S. at 4. On the first day of trial, counsel, who had met with the petitioner just days prior to trial, reported to the court that he felt prepared to try the case. *Id*. at 5. The petitioner argued multiple times to the trial judge that counsel could not possibly be prepared for trial because of the short preparation time and small amount of time spent with the petitioner, and insisted that he did not want the appointed counsel to represent him. *Id*. at 4–10. However, as the magistrate judge quoted in this case, the Court stated in *Morris*, "Not every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel." *Id*. at 11. Furthermore, the Court rejected the assertion that the Sixth Amendment right to counsel would be without substance if it lacked the right to a *meaningful attorney-client relationship*. *Id*. at 13–14 (stating that no court could guarantee that every defendant will develop rapport with his client and a *meaningful relationship* is not guaranteed by the Sixth Amendment).

The only language in *Morris* cited to by Brown discussed the fact that trial counsel promptly replaced the hospitalized attorney that had previously been assigned to the defendant, reviewed the prior attorney's research records carefully, and conducted conferences with the defendant in order to support the fact that counsel performed his duty. (ECF No. 24 at 2). In the present case, trial counsel testified that he reviewed the discovery materials—alone and with Brown—received from Brown's first attorney, private counsel, Chip Price. (ECF No. 11-3 at 179-80). Brown told trial counsel he was going to retain private counsel again, but never did.

---

[2] The trial counsel in *Morris* was assigned to the case six days prior to the trial date because petitioner's first assigned counsel was hospitalized for emergency surgery. *Morris*, 461 U.S. at 5.

(ECF No. 11-3 at 190-91). Trial counsel testified that he conducted several conferences with Brown prior to trial; that he spent approximately eight hours with him reviewing the case, including the State's evidence; and that he was willing to spend as much time as necessary to meet with applicant to prepare the case. (ECF No. 20 at 11). In this case, trial counsel testified that his strategy developed throughout the trial due to the fact that he was not aware of Brown's side of the night's events before trial because Brown did not disclose details to him. The PCR court found that trial counsel's lack of knowledge did not qualify as ineffective assistance of counsel because it was due to Brown's "refusal to participate in trial preparation," rather than a lack of time and did not constitute a failure to render reasonably effective assistance under prevailing professional norms. (ECF No. 1-2 at 9). *See Gardner v. Ozmint*, 511 F.3d 420, 427 (4th Cir. 2007) ("[W]hen determining whether counsel has delivered a constitutionally deficient performance, a state court also may consider a defendant's own degree of cooperation . . ."); *see also Powell v. Shanahan*, C.A. No. 3:13-496-FDW, 2014 WL 1464397, at *8 (D.N.C. April 15, 2014) ("To the extent Petitioner is complaining that his attorney did not 'form a meaningful relationship' with him or did not present a strong enough defense, Petitioner cannot fault his trial attorney for Petitioner's own refusal to cooperate."). The PCR court's finding is not an unreasonable application of *Strickland*. 466 U.S. at 691 (it is well settled that "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. . . . In particular, what investigation decisions are reasonable depends critically on such information."). Moreover, Brown cites to no case besides *Morris* in his objection to support his argument. Accordingly, Brown failed to produce evidence that the PCR court's decision was contrary to applicable Supreme Court precedent such that the result should differ from *Morris*.

Second, as to the issue of deference to the PCR court's determination of trial counsel's credibility, the court finds that the magistrate judge did not err. Credibility determinations are factual determinations and, as such, "are presumed to be correct absent clear and convincing evidence to the contrary." *See Wilson v. Ozmint*, 352 F.3d 847, 858 (4th Cir. 2003) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). As the magistrate stated, a PCR court's credibility finding is entitled to deference. *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008) ("[F]or a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear."). Neither the PCR court nor the magistrate judge stated that there was a factual dispute as to the number of meetings between trial counsel and Brown or the amount of time trial counsel spent preparing for trial. However, Brown argued that due to the amount of time spent with Brown preparing, trial counsel was unprepared for trial. Trial counsel testified that he felt well prepared from a discovery standpoint and, further, that while he spent approximately eight hours with Brown, he would have spent as much time as was necessary; however, Brown was hostile and would not actively assist him. (ECF Nos. 11-3 at 193–94 and 20 at 12). Thus, the fact that the PCR court found trial counsel's testimony to be credible supports its decision to deny habeas corpus relief for failure to prepare for trial.[3]

Finally, Brown fails to prove that the PCR court based its dismissal on clearly erroneous fact. He argues that the PCR court erroneously found that there were two "substantive" meetings between trial counsel and Brown during the week before trial but fails to cite to a passage from the PCR court's order. It appears that the PCR court never mentioned two "substantive" meetings occurring prior to the week before trial. In its discussion of the meetings between trial counsel and Brown, the PCR court stated, "Trial counsel testified he had two meetings with the

---

[3] Brown presented no evidence to support a finding that trial counsel's testimony was not credible. The PCR court's determination that Brown's testimony lacked credibility is discussed below. *See infra* Section II.B.

Applicant prior to the week before trial . . . [and] testified they had more meetings the week before the trial and estimated he spent 8 hours with the Applicant," and, "Trial counsel testified that they had numerous meetings before the trial (most of which took place the week beforehand)." (ECF No. 1-2 at 6). According to the record, this is an accurate summation of trial counsel's testimony. (ECF No. 11-3 at 189–194). Moreover, Brown stated in his objection that "testimony is undisputed that Brown and trial counsel met approximately three times just days before the trial was set to begin." (ECF No. 24 at 3). Accordingly, PCR's reliance on this fact was not, in any way, erroneous.

Brown argues that evidence does not support the PCR court's finding that trial counsel was dealing with an uncooperative client because trial counsel was able to obtain some information helpful to Brown's defense from Brown. *Id*. However, trial counsel's testimony stated that Brown was hostile, that the majority of their conversations consisted of Brown telling trial counsel that Brown did not want him as Brown's attorney and intended to hire another lawyer, and that it was difficult to obtain information about the case from Brown. (ECF Nos. 1-2 at 6, 11-3 at 190–194). The PCR court found trial counsel to be credible and found Brown to lack credibility.[4] Accordingly, the PCR court's finding was not clearly unreasonable.

Brown asserts that the PCR court's note that trial counsel was a "very experienced criminal defense attorney" was clearly erroneous because "there is no authority for the position that an attorney can neglect basic pretrial investigation once he has reached a particular professional stature." (ECF No. 24 at 3). However, the PCR court appears to have mentioned trial counsel's experience as background information or as support for its favorable finding on trial counsel's credibility. A reasonable reading of the PCR court's order offers no support for

---

[4] *See infra* Section II.B.

Brown's argument that trial counsel was held to a lesser standard due to his "professional stature." The PCR court correctly cited and applied the *Strickland* standard to assess trial counsel's performance. Accordingly, Brown's argument is unsupported and inapplicable to these circumstances. The court agrees with the magistrate judge that the PCR court did not unreasonably apply *Strickland* when it held that trial counsel's pretrial investigation and preparation was not "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Accordingly, Brown's first objection is overruled.

### B.  Failure to Locate an Exculpatory Witness

In his second objection, Brown argues that the magistrate judge erred in finding that Brown was not entitled to relief due to counsel's inability to locate Andrell Terry, Brown's first cousin, as a witness because (1) the PCR court erroneously found that the failure to locate Terry was Brown's fault and (2) the facts of the present case are distinguishable from two cases cited by the magistrate judge.

First, the PCR court did not find that the failure to locate Terry was Brown's fault. Rather, the court explained why counsel's inability to locate Terry before trial was excusable, explaining that Terry never contacted trial counsel despite knowing about Brown's arrest prior to trial and that Brown admitted that he never instructed Terry to contact trial counsel. (ECF No. 1-2 at 7). The PCR court cited to the portion of the trial transcript in which Brown testified that he and trial counsel made an effort to find Terry but were unsuccessful (ECF No. 11-2 at 10–11) and a portion in which counsel mentioned their inability to locate Terry in his closing argument, *id*. at 35–36. Trial counsel elaborated at the PCR hearing that he had only a phone number for Terry and did not know where to issue a subpoena. (ECF No. 11-3 at 194). He testified further that his investigator, who has been thorough in the past, made efforts to locate Terry but was

unable to do so prior to trial. (ECF No. 11-3 at 183). Brown admitted in his testimony at the PCR hearing that he had only given trial counsel Terry's information the weekend before trial. (ECF No. 11-3 at 174).

Furthermore, from Terry's testimony at the PCR hearing, the PCR court found Terry to lack credibility. (ECF No. 1-2 at 7). The court also found Brown not to be a credible witness. *Id*. Terry, who the PCR court noted was Brown's first cousin, testified that he dropped Brown off near the victims' house the night of the incident. (ECF No. 1-2 at 6). He did not recall the exact time, but noted that it was dark. *Id*. He stated that Brown had a bag of cash but did not have a police shirt, mask, vest or weapons. *Id*. Terry stated that he was unaware that at trial Brown testified that the money was Terry's. (ECF No. 11-3 at 134 and 216). Terry testified that he did not know that he was driving Brown to Howard's house, had nothing to do with any transaction, and did not realize that the house at which he dropped Brown off was Howard's until seeing the story on the news. (ECF No. 11-3 at 123-124). This was at odds with Brown's claim at the trial that Terry and Howard had been close friends and drug partners for years. (ECF No. 11-1 at 322). Further, at the PCR hearing, Brown testified that Terry's name acted as a "voucher on this particular deal" with Howard. (ECF No. 11-3 at 140). Terry testified that during the drive he saw money in a bag, which Brown claimed was around twenty-three thousand dollars, and figured that Brown was on his way to purchase purses to sell at Brown's boutique. *Id*. at 125. At the PCR hearing, Brown corroborated Terry's testimony. (ECF No. 1-2 at 6). Brown admitted that he testified at trial that Terry gave him the cash in the bag and stated that this was a lie. *Id*. at 6-7. Further, Brown testified at the PCR hearing that he did not speak to Terry after he was dropped off. (ECF No. 11-3 at 144, 177, 218). However, at trial he had testified that he spoke to Terry on the phone who, because of Terry's past dealings with Howard and familiarity

11

with the area, instructed Brown to go into the woods and wait for a ride.  (ECF No. 11-1 at 337).  The court finds that the PCR court was not unreasonable in finding Terry's testimony, which conflicted with Brown's testimony on several points as well as the information Brown gave to trial counsel, to lack credibility.

The PCR court concluded that "trial counsel made every effort to locate Terry, was unable to do so, and informed the trial judge and jury of this. . . This Court finds the Applicant failed to prove trial counsel was deficient.  This Court also finds that, based upon the utter lack of credibility of Terry's story, the Applicant failed to prove any resulting prejudice."  (ECF Nos. 1-2 at 7 and 20 at 14).  The court finds that the PCR court's assessment of trial counsel's performance was not an unreasonable application of *Strickland*.

Second, the two cases that Brown seeks to distinguish, *Boseman v. Bazzle*, 364 F. App'x 796 (4th Cir. 2010) and *United States v. Pellerito*, 878 F.2d 1535 (1st Cir. 1989), were cited by the magistrate judge only as additional authority for a statement quoted from *Mollohan v. McBride*, C.A. No. 2:04-1021, 2006 WL 660870, at *15 (S.D. W.Va. Mar. 15, 2006).  The court in *Mollohan* stated, "Counsel cannot be expected to investigate a fact of which he or she has no knowledge."  *Mollohan*, 2006 WL 660870, at *5.  As the magistrate judge stated, Brown only notified his counsel that Terry was able to testify the weekend before trial.  (ECF No. 11-3 at 174).  Before that time, trial counsel could not be expected to be aware of the witness.  Subsequent to learning of Terry, trial counsel's investigator attempted to find and contact Terry but was unsuccessful.  (ECF No. 11-3 at 183, 194).  Brown's argument relating to *Bazzle* and *Pellerito* fails to demonstrate that the magistrate judge erred in finding that Brown failed to provide evidence that the PCR court's decision was an unreasonable application of applicable Supreme Court precedent.

12

Finally, Brown argues in a conclusory fashion that there is no case approving of a *failure to conduct meaningful pretrial investigation*, however, Brown fails to demonstrate that trial counsel in this case failed to conduct proper pretrial investigation.  The PCR court addressed trial counsel's performance under the standard set forth in *Strickland*.  According to the evidence in the record, the decision of the state court was neither contrary to, nor an unreasonable application of, clearly established federal law under § 2254(d)(1).  Accordingly, the court agrees with the magistrate judge's recommendation and Brown's objection is overruled.

### C.  Inconsistencies in Victim Testimony

In his third objection, Brown argues that the magistrate erred by finding that the PCR court's decision was not contrary to Supreme Court precedent because trial counsel's failure to call several witnesses who could allegedly support a prior connection between Brown and the victim constituted ineffective assistance of counsel.  Also, for the first time, Brown argues that the fact that the witnesses did not testify at the PCR hearing is excusable default pursuant to *Martinez v. Ryan*, 566 U.S. 1 (2012).  He contends that a connection between Brown and the victim would have lent "exponential credibility" to the assertion that Brown was present at the crime scene only to purchase drugs from the victim.

To the extent that Brown alleges that witnesses would have been available to testify regarding his past relationship with the victim, prejudice from trial counsel's failure to interview or call witnesses cannot be shown where the witnesses do not testify at the PCR hearing.  *See Bannister v. State*, 509 S.E.2d 807, 809 (S.C.1998) (holding that the court "has repeatedly held a PCR applicant must produce the testimony of a favorable witness or otherwise offer the testimony in accordance with the rules of evidence at the PCR hearing in order to establish prejudice from the witness' failure to testify at trial."); *Glover v. State*, 458 S.E.2d 539, 540 (S.C.

1995) ("[B]ecause the other witnesses respondent claimed could have provided an alibi defense did not testify at the PCR hearing, respondent could not establish any prejudice from counsel's failure to contact these witnesses.").  Brown cited to *Martinez* for the assertion that this court should consider his argument that failing to call witnesses, which allegedly support that he had known the victim for years, constituted ineffective assistance of PCR counsel and thus allows the excusal of default on the issue.  (ECF No. 24 at 6).

However, Brown's reliance on *Martinez* is misguided in this case.  There has been no assertion that Brown defaulted on the issue of ineffective assistance of trial counsel on the ground of failing to call witnesses to support the existence of Brown and the victim's relationship.  The PCR court addressed the merits of Brown's claim of ineffective assistance of trial counsel for failing to point out inconsistencies in victim's testimony and concluded that trial counsel's failure to call witnesses to support inconsistencies alleged by Brown did not qualify for habeas relief.  The PCR court found that:

> [T]he Applicant failed to meet his burden of proving trial counsel should have contacted witnesses in order to refute the adult victim's contention that he did not know him. Trial counsel testified that Applicant addressed this issue during his trial testimony. Trial counsel also testified that, given the circumstances of this case, this was not a big issue. This Court agrees, based on the State's presentation of overwhelming evidence of the Applicant's guilt.  Regardless, as these potential witnesses did not testify at the PCR hearing, this Court cannot speculate as to what they would have testified to at trial.

(ECF No. 1-2 at 8) (internal citations omitted).

In *Martinez*, the Court considered whether a federal habeas court may excuse a procedural default of an ineffective assistance of counsel claim when the claim was not properly presented in state court due to an attorney's errors in an initial review collateral proceeding when that is the first instance in which a prisoner can bring an ineffective assistance of trial counsel

challenge. The Court held that held that a federal habeas court can find cause to excuse a procedural default where:

> (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law *requires* that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding.

*Trevino v. Thaler*, 133 S. Ct. 1911, 1918 (2013) (quoting *Martinez*, 566 U.S. at 14). To be substantial under the first element, "the prisoner must demonstrate that the claim has some merit." *Martinez*, 566 U.S. at 14. Again, under *Strickland*, to succeed on a claim of ineffective assistance of counsel, a petitioner must show that his counsel's performance was both unreasonably deficient and that the defense was actually prejudiced as a result of counsel's errors. *Strickland*, 466 U.S. at 684. There is a strong presumption that an attorney performed within the wide range of professional competence, and the attorney's performance will be deemed to have been deficient only if it fell below an objective standard of reasonableness measured under prevailing professional norms. *Id*. at 689, 694. To prove prejudice, the petitioner must demonstrate that there is a reasonable probability that, but for counsel's unreasonable errors, the result of the proceeding would have been different. *Id.* at 694.

The application of the *Strickland* test in the context of *Martinez* means that Petitioner must show that his representation during the PCR proceeding was objectively unreasonable, and that, but for his errors, there is a reasonable probability that Petitioner would have received relief on a claim of ineffective assistance of trial counsel in the state PCR matter.

In this case, Brown has not demonstrated that his argument that PCR counsel failed to adequately develop claims regarding alleged extra witnesses could be considered "substantial"

under *Martinez* standards.   To succeed, Brown would need to "show that [PCR] counsel's representation during the post-conviction proceeding was objectively unreasonable, and that, but for his errors, there is a reasonable probability that Petitioner would have received relief on a claim of ineffective assistance of trial counsel in the state post-conviction matter." *Sexton v. Cozner*, 679 F.3d 1150, 1157 (9th Cir. 2012).  Brown cannot meet this showing.

Brown argues that the significance of the extra witnesses' testimony is that it would add credibility to his assertion that he knew the victim prior to the incident and that he was not the intruder, but was, rather, present near the crime scene intending to buy drugs.  (ECF No. 24 at 6). Brown does not offer any examples of witnesses that could have been called to support his assertion.  Further, trial counsel testified that Terry was the only witness that Brown ever made him aware of.  (ECF No. 11-3 at 194).  Brown cannot show that trial counsel was deficient in failing to call extra witnesses at the trial because Brown never informed trial counsel of any potential witnesses, aside from Terry and does not demonstrate that trial counsel should have been aware of the alleged witnesses through other means.  *See Sexton*, 679 F.3d at 1157 (petitioner must "show that [PCR] counsel's representation during the post-conviction proceeding was objectively unreasonable, and that, but for his errors, there is a reasonable probability that Petitioner would have received relief on a claim of ineffective assistance of trial counsel in the state post-conviction matter.").  On the facts presented, Brown could not demonstrate that there is a reasonable probability that he would have received relief on his claim of ineffective assistance of trial counsel.

Similarly, Brown cannot show that the result of the trial would have been different had the witnesses testified.  Brown intended for these witnesses to support the version of the night that he and Terry testified to at the PCR hearing.  (ECF No. 24 at 5-6).  However, the PCR court

commented on the lack of credibility of this story.  (ECF Nos. 1-2 at 7 and 20 at 14).  Without Petitioner alleging who the witnesses would be or what they would say, the court cannot find that the result of the trial would have been different had the witnesses been called.  Further, the PCR court noted several times that the State presented overwhelming evidence of the Brown's guilt.  (ECF No. 1-2 at 8).  *See Franklin v. Catoe*, 346 S.C. 563, 570 n.3, 552 S.E.2d 718, 722 n.3 (2001) (finding overwhelming evidence of guilt negated any claim that counsel's deficient performance could have reasonably affected the result of defendant's trial).  Accordingly, Brown cannot show that counsel's representation during the PCR proceeding was objectively unreasonable, and that, but for his errors, there would be a reasonable probability that he would have received relief on a claim of ineffective assistance of counsel in the state PCR matter.  Thus, Brown would has made no showing of adequate cause and prejudice under *Martinez*.

The magistrate judge found that the record supports the PCR court's determination on this ground.  (ECF No. 20 at 17).  The magistrate judge noted that, as stated above, the PCR court found trial counsel to be credible and found neither Brown nor Terry to be credible witnesses.  (ECF No. 1-2 at 7).  Trial counsel testified that Brown addressed the fact that he had known the victim for years in Brown's testimony.  (ECF No. 20 at 17).  Thus, the jury was made aware of Brown's allegation.  However, trial counsel testified that he believed it was insignificant to the case whether Brown and the victim knew each other.  *Id*.  *Wilson v. Greene*, 155 F.3d 396, 404 (4th Cir. 1998) ("Decisions about what types of evidence to introduce 'are ones of trial strategy, and attorneys have great latitude on where they can focus the jury's attention and what sort of mitigating evidence they can choose not to introduce.'" (quoting *Pruett v. Thompson*, 996 F.2d 1560, 1571 n. 9 (4th Cir. 1993))).  Regardless, as stated above, trial counsel testified that Brown was not cooperative during preparation for trial and that Terry

was the only witness that Brown ever made him aware of. (ECF No. 11-3 at 194). *Gardner*, 511 F.3d at 427 ("[W]hen determining whether counsel has delivered a constitutionally deficient performance, a state court also may consider a defendant's own degree of cooperation . . ."). Brown offers no evidence that the PCR court's decision regarding any witnesses who did not testify at the PCR hearing was unreasonable according to applicable Supreme Court precedent.

Considering the evidence in the record and applying a strong presumption that trial counsel's conduct falls within the wide range of reasonable professional assistance, *see Strickland*, 466 U.S. at 689, the court finds that there is no evidence that the PCR court's decision was contrary to or an unreasonable application of applicable Supreme Court precedent, and the petitioner is not entitled to habeas corpus relief on this ground. Accordingly, Brown's objection is overruled.

### D. Failure to Introduce Evidence

In his fourth objection, Brown alleges that the magistrate judge based his recommendation that summary judgment be granted on Petitioner's claim that "strategic decisions are virtually unreviewable in the context of an ineffective assistance of counsel claim." Brown argues in a conclusory fashion that the magistrate judge's finding was not supported by the record because trial counsel's failure to introduce the white t-shirt was not for strategic reasons; the t-shirt was of critical importance to Brown's defense; and the court cannot defer to trial counsel's professional judgment because he testified that he did not remember why he did not attempt to put the t-shirt into evidence. (ECF No. 24 at 7).

First, as to Brown's assertion that strategic decisions of counsel are virtually unreviewable in the context of an ineffective assistance of counsel claim, the magistrate judge properly applied the appropriate law. The standard was articulated in *Strickland*:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Strickland*, 466 U.S. at 689 (internal citation omitted). The court finds that the magistrate judge did not error in applying the aforementioned standard.

Applying the *Strickland* standard, the PCR court found that the petitioner failed to meet his burden of proving that trial counsel should have introduced the white t-shirt into evidence. (ECF No. 20 at 18). The PCR court found that the failure to introduce the shirt into evidence was not deficient under *Strickland* (1) in light of the fact that the petitioner was hostile with trial counsel during trial preparation and during the trial itself and (2) because Brown could not prove any resulting prejudice. (ECF No. 20 at 18). The PCR court stated:

> Trial counsel actually made the argument during closing statements at trial that the police shirt should be bloody if the officers' accounts were accurate. Any potential deficiency in not introducing the white t-shirt at trial was negated by the State's presentation of overwhelming evidence of the Applicant's guilt. *See Franklin v. Catoe*, 346 S.C. 563, 570 n.3, 552 S.E.2d 718, 722 n.3 (2001) (finding overwhelming evidence of guilt negated any claim that counsel's deficient performance could have reasonably affected the result of defendant's trial); *Geter v. State*, 305 S.C. 365, 367, 409 S.E.2d 344, 346 (1991) (concluding reasonable probability of a different result does not exist when there is overwhelming evidence of guilt).

(ECF No. 1-2 at 8) (internal trial transcript citation omitted).

In his objection, Brown argues that because of the jury's questions during deliberation and the fact that Brown argued that he was present at the scene but not the robber, exculpatory evidence that he was not the person in the house was critical and that "such evidence existed. It

was just never introduced." (ECF No. 24 at 7). However, the jury was not ignorant about the white t-shirt covered in blood. The white t-shirt was not *seen* at trial, but it was *discussed* at the trial. (ECF No. 20 at 19). Trial counsel's closing statement discussed the white t-shirt and contrasted it with the blue police shirt and vest not covered in blood. *Id.* Additionally, trial counsel testified that inconsistencies between the shirts were also addressed on one of the cross-examinations and that there was testimony that Brown's t-shirt was very bloody. (ECF No. 11-3 at 197). Further, the jury's questions mentioned by Brown related to the blue police shirt, not the white t-shirt or its appearance. (ECF No. 11-2 at 98–100). The jury's first request related to clarification of a word in a police report that the jury was having trouble reading. (ECF No. 11-2 at 97–98). The judge clarified for the record that the word was "cut" and was referring to the blue police shirt and how it was removed from Brown; whether torn or cut.[5] *Id.* at 98–99. The jury's second request was to hear "the testimony from each officer about the blue police shirt back in the woods." (ECF No. 11-2 at 100). There is no evidence to suggest that admittance of the white t-shirt into evidence would have affected these questions in any way.

At trial, there was no dispute or disagreement about the fact that the t-shirt existed or about its appearance; as Brown stated in his response to the motion for summary judgment, "No one disputed the shirt was bloody and torn." (ECF No. 16 at 17). Brown has not shown a need to admit the shirt as evidence other than for effect. Thus, the PCR court's finding that Brown failed to show prejudice and was not entitled to relief for counsel's failure to enter the white t-shirt into evidence was not an unreasonable application of *Strickland*.

---

[5] The trial judge informed the jury that he could not comment on the facts and that it was for the jury to determine from the evidence what the word meant. (ECF No. 11-2 at 99).

### E.  Failure to Raise Appellate Issue

In his fifth objection, Brown argues that there is no authority in the law suggesting that Brown would have been unsuccessful on appeal on his claim that the accomplice liability jury charge was inappropriate and, thus, that the magistrate judge erred by recommending that summary judgment be granted on this ground.

"[A]ppellate counsel is not required to raise every non-frivolous issue that is presented by the record." *Tisdale v. State*, 594 S.E.2d 166, 167 (S.C. 2004). "There can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review;" rather, appellate counsel has a professional duty to choose between potential issues based on their merit. *Jones v. Barnes*, 463 U.S. 745, 752 (1983). "Notwithstanding *Barnes*, it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim" on appeal, however, "it [will be] difficult to demonstrate that counsel was incompetent." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Id.* "[A petitioner] must first show that his counsel was objectively unreasonable in failing to find arguable issues to appeal—that is, that counsel unreasonably failed to discover nonfrivilous issues and to file a merits brief raising them. If [a petitioner] succeeds in such a showing, he then has the burden of demonstrating prejudice." *Robbins*, 528 U.S. at 285.

In support of his argument, Brown discusses *Wilds v. State*, 756 S.E.2d 387 (S.C. Ct. App. 2014). In *Wilds*, the South Carolina Court of Appeals found that the PCR court correctly found that Wilds' appellate counsel was ineffective for failing to raise the issue that an accomplice liability charge was given by the trial court. However, *Wilds* is quite distinguishable

from the case at hand. *Wilds* involved the armed robbery and murder of the victim. *Id*. at 388. Wilds and two co-defendants robbed the victim on the street and, according to the co-defendants, Wilds shot the victim in the chest when the victim refused to let go of his wallet. *Id*. at 389. In *Wilds*, the court found that the petitioner was prejudiced by the trial court's instruction on accomplice liability because the instruction was given in response to the jury's question regarding whether a conviction meant that it found that the *petitioner* actually pulled the trigger.[6] *Id*. at 390–91. The jury returned guilty verdicts after receiving the instruction that the hand of one was the hand of all.[7] *Id*. In *Wilds*, the alleged crime involved a shooting and the evidence did not indicate that anyone other than the petitioner was the shooter. *Id*. at 390. Further, it is clear that the accomplice liability charge played a role in the jury's verdict. *See id*. at 391 ("Because the instruction was given in response to the jury's question regarding whether a conviction meant it found Wilds actually pulled the trigger, and because the jury returned guilty verdicts after receiving the instruction, the circumstances indicate the instruction enabled it to unanimously render verdicts of guilty.").

In the present case, the trial jury was also given a hand of one/hand of all instruction. However, (1) there was no shooting or murder involved, (2) there was no lack of evidence indicating that anyone other than the petitioner was involved in the crimes, and (3) there is no evidence to suggest that the instruction affected the jury's decision. On the contrary, both Howard and his juvenile son testified that the intruder was on the phone with someone during the commission of the home invasion regarding the money the intruder was searching for. (ECF No.

---

[6] The jury sent a note to the trial court asking, "[I]f we say [Wilds is] guilty of murder, are we saying he of the three [alone] actually pulled the trigger?" *Wilds*, 756 S.E.2d at 389.

[7] *See, e.g., State v. Condrey,* 562 S.E.2d 320, 324 (S.C. Ct. App. 2002) ("Under the 'hand of one is the hand of all' theory [of accomplice liability], one who joins with another to accomplish an illegal purpose is liable criminally for everything done by his confederate incidental to the execution of the common design and purpose.").

20 at 22). Thus, there is evidence in the record that supports that the intruder was not operating alone and had an accomplice. The Supreme Court of South Carolina has approved a broad accomplice liability charge that stated, ". . . if a crime is committed by two or more persons who are acting together in the commission of a crime, then the act of one is the act of both." *State v. Kelsey*, 502 S.E.2d 63, 76 (S.C. 1998); *see Condrey*, 562 S.E.2d at 324 ("Under an accomplice liability theory, a person must personally commit the crime or be present at the scene of the crime and intentionally, or through a common design, aid, abet, or assist in the commission of that crime through some overt act.").

It is well established that the trial judge determines the law to be charged from *all* the evidence presented. *See State v. Knoten,* 555 S.E.2d 391, 392 (S.C. 2001). Neither party refutes that Brown was present at the scene of the crime at the time the crime was being committed. And there is a possibility that based on the prosecution's evidence, which included the fact that Brown was discovered with a cell phone (ECF No. 11-1 at 162), the jury could determine that Brown was guilty through accomplice liability as the party on the other end of the telephone. As the magistrate judge stated, the evidence "suggested the possibility that a second person was involved in the crimes, even if only by way of communication with the assailant during the crimes." (ECF No. 20 at 23). Thus, the trial judge was permitted to issue a relevant jury charge. *State v. Peer*, 466 S.E.2d 375, 380 (S.C. Ct. App. 1996) (holding a trial court has a duty to give a requested instruction that correctly stated the law applicable to the issues and is supported by the evidence); *State v. Williams*, 624 S.E.2d 443, 445 (S.C. Ct. App. 2005) ("If there is any evidence to support the requested charge, the trial court should grant the request."). Accordingly, Brown cannot show that appellate counsel's failure to raise the jury instruction issue was objectively unreasonable or that if he had raised the issue there was a reasonable possibility Brown would

have prevailed. *Bennett v. State*, 680 S.E.2d 273, 276 (S.C. 2009) ("Even if appellate counsel's performance was deficient, we find that such performance did not prejudice [the petitioner]. In order to show that he was prejudiced by appellate counsel's performance, a PCR applicant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (internal quotation marks omitted)).

Furthermore, contrary to *Wilds*, there is no evidence present in this case to suggest that the jury relied upon or considered the jury charge on accomplice liability in rendering a guilty verdict. Even assuming arguendo that it was error for the trial judge to have given the accomplice liability charge, the court finds such error would be harmless because of the considerable evidence in the record supporting Brown's guilty verdict.[8] *See Webb v. Cartledge*, C.A. No. 9:15-1720-JMC-BM, 2015 WL 9906161, at *8 (D.S.C. Sept. 28, 2015), *report and recommendation adopted*, C.A. No. 9:15-01720-JMC, 2016 WL 245192 (D.S.C. Jan. 21, 2016), *appeal dismissed*, No. 16-6161, 2016 WL 4434492 (4th Cir. Aug. 22, 2016); *see also State v. Hendon,* No. 07–80, 2007 WL 8325960 at *2–3 (S.C. Ct. App. Feb. 14, 2007) (Finding that even assuming it was error to give accomplice liability charge, the error would be harmless because there was competent evidence to support the guilty verdict); *State v. Bailey,* 377 S.E.2d 581, 584 (S.C. 1999) (holding that an insubstantial error not affecting the result of the trial is harmless where "guilt has been conclusively proven by competent evidence such that no other rational conclusion can be reached").

### III.   Conclusion

After a thorough review of the Report and the entire record in this case, the court adopts the magistrate judge's Report (ECF No. 20) and incorporates it herein. Accordingly,

---

[8] *See supra* Section I.

Respondent's motion for summary judgment (ECF No. 12) is **GRANTED** and Petitioner's petition is **DISMISSED**.

Additionally, a certificate of appealability will not issue to a prisoner seeking habeas relief absent "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A prisoner satisfies this standard by demonstrating that reasonable jurists would find both that his constitutional claims are debatable and that any dispositive procedural rulings by the district court are also debatable or wrong.  *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001).  In this case, the court finds that the petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, the court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

March 29, 2017
Anderson, South Carolina